IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRYAN S.,[1]

        Plaintiff,                                  Civ. No. 6:22-cv-00622-MC

      v.                                         OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____

**MCSHANE, Judge**:

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

        Plaintiff filed an application for benefits on July 1, 2016, ultimately alleging disability as of January 1, 2016. Tr. 247.[2] After the first hearing, the Administrative Law Judge ("ALJ") determined Plaintiff was not disabled under the Social Security Act. Tr. 73–82. Plaintiff appealed the decision and, on remand from this court, a second hearing was held on November 8, 2021.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Tr. 1222–60. After the second hearing, the ALJ once again determined Plaintiff was not disabled. Tr. 1197–1211. Plaintiff argues the ALJ erred by (1) failing to find Plaintiff's vertigo and tinnitus severe at step two; (2) rejecting Plaintiff's subjective symptom testimony; (3) rejecting the opinion of Theo Orchard, PA-C; and (4) failing to include all Plaintiff's limitations in the RFC.

Because the ALJ erred, and because the record is fully developed and requires a finding that Plaintiff is disabled, the Commissioner's decision is REVERSED and REMANDED for calculation of benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined Plaintiff had the following severe impairments: degenerative disc disease; cardiomyopathy; depressive disorder; and anxiety disorder. Tr. 1200. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: he can occasionally push/pull with the bilateral upper extremities; can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally crawl; can occasionally reach overhead bilaterally, and can tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations; can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery; and can perform simple, routine tasks consistent with a reasoning level of 1 or 2. Tr. 1203.

I.   **Step Two**

At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effect when formulating the claimant's RFC. *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014).

The ALJ found that Plaintiff had multiple severe impairments at step two, as well as four non-severe medically determinable impairments, low vision, hernia, COPD, and syncope. Tr. 1200. Plaintiff argues the ALJ erred by not including Plaintiff's vestibular system impairments of vertigo and tinnitus in his step two determination.

The ALJ's refusal to acknowledge Plaintiff's vertigo and tinnitus as severe or medically determinable impairments is unsupported by the evidence. The ALJ provides no reasoning as to why these issues go unacknowledged despite medical records clearly supporting such a finding. At his first hearing, Plaintiff testified to suffering from vertigo. Tr. 111. At the second hearing, Plaintiff testified that it had not changed. Tr. 1241. Plaintiff's medical records show that he first complained of vertigo and tinnitus in December 2016. Tr. 415. He experienced both over the next few months and providers performed tests to determine the severity of his condition. Tr. 749, 884, 886, 890–91, 933, 973, 977, 980. Records from 2017 show that Plaintiff did not pursue treatment due to financial reasons, and that the condition persisted into 2018. Tr. 937, 987–88,

995. Nevertheless, because the ALJ found that Plaintiff had other impairments that were severe, this error was harmless. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (failure to identify medically determinable impairment at step two was harmless because step two was decided in claimant's favor).

**II.     Subjective Symptom Testimony**

Plaintiff contends the ALJ erred in discounting his subjective statements about his limitations. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the

claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

At the November 2021 hearing, Plaintiff testified that his chronic back pain, chest pain, vertigo, depression, and anxiety prevent him from engaging in full time work. Tr. 1233. Plaintiff suffered a heart attack in 2019 and testified that he feels constant chest pain without any form of temporary relief. Tr. 1240. When asked about any changes to his neck and back pain since his first hearing in July 2018, Plaintiff testified there had been no change, that it still hurt, and that he was still experiencing dizziness. Tr. 1241. In his first hearing, Plaintiff described the pain as a "doughnut feeling of agony" around his lower back, which prevents him from sitting or standing for more than five minutes at a time; he has to squirm or change positions constantly. Tr. 113–14. Plaintiff also feels this pain when bending, squatting, or kneeling. Tr. 116. He testified to experiencing vertigo when standing, stating that it only goes away when he sits back down. Tr. 1241. When experiencing vertigo, Plaintiff cannot concentrate or focus and must hold onto or lean on things when walking. Tr. 115, 1241–42. Before 2021, Plaintiff limited his driving to fewer than ten miles at a time, and only when he was not experiencing vertigo. Tr. 1234, 1241.

After two severe falls in 2021, Plaintiff no longer drives. Tr. 1235. Plaintiff also testified to having panic attacks at least twice a week that required him to isolate in order to calm down. Tr. 1242–44.

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 1204. Specifically, the ALJ discounted Plaintiff's subjective complaints because they were inconsistent with his activities of daily living and because they conflicted with the objective medical evidence in the record that showed improvement after treatment.

1. **Daily Living**

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms if the claimant's activities contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to be utterly incapacitated to receive disability benefits, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

The ALJ discounted Plaintiff's subjective symptom testimony because his "activities of daily living, including caring for his wife while she battles Leukemia demonstrate greater physical functioning than has been alleged." Tr. 1209. However, the ALJ did not explain how

caring for his wife undermines Plaintiff's testimony, nor expand on any other activities of daily living that would support this conclusion. Because the ALJ did not explain his reasoning, this fails to provide a specific, clear and convincing basis upon which to discount Plaintiff's subjective symptom testimony. *See Felicia F. P. v. Comm'r Soc. Sec. Admin.*, Case No. 3:21-cv-00889-AR, 2023 WL 1991530, at *3 (D. Or. Feb. 14, 2023).

### 2. Conflicts with Medical Records and Improvement with Treatment

The ALJ also discounted Plaintiff's subjective symptom testimony based on alleged conflicts with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole basis for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

In finding that Plaintiff's allegations were inconsistent with medical records, the ALJ relied heavily on Plaintiff's cervical and lumbar surgeries. Tr. 1206. Essentially, the ALJ found that Plaintiff improved with treatment. A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Following Plaintiff's C5-6 discectomy in September 2016, his neck pain was significantly better. Tr. 664. He had no arm pain with full strength throughout his upper extremities and he was able to ambulate independently without difficulty. Tr. 664. However, two

months later, in November, Plaintiff began complaining of right sided low back pain radiating down into his right leg and into his toes. Tr. 676. Then, in January 2017, Plaintiff complained of increased neck pain, nausea, dizziness, decreased hearing, blurred vision, shortness of breath, and palpitations. Tr. 749. By the end of January, he complained of worsening vertigo and received a referral for further examination. Tr. 933, 935. At his evaluation in March, Plaintiff had symptoms consistent with labyrinthitis, with impairments including hearing loss, motion sensitivity, neck and low back pain, decreased cervical range of motion, vertigo, and nausea that all lead to functional limitations. Tr. 977. On his functional gait assessment, he received a score of 15/30, with any score less than 23/30 indicating a fall risk. Tr. 975. His dizziness handicap inventory assessment resulted in a score of 86, where scores of 54+ indicate a severe handicap. Tr. 976–77. At a follow-up appointment in June, Plaintiff presented with increased pain radiating up and down his back and into his legs. Tr. 937. Due to increased weakness in his left leg, Plaintiff had fallen several times after losing his balance. Tr. 937. An MRI in August revealed Plaintiff had moderate to severe bilateral neural foraminal narrowing secondary to degenerative discogenic changes in his L5-S1, and mild right and moderate left neural foraminal narrowing secondary to mild annular disc bulging in his L4-5. Tr. 893.

     Plaintiff then underwent another surgery and in November 2017 reported that his bilateral lower extremity pain was "completely resolved." Tr. 895. However, Plaintiff continued to have back pain. Tr. 895. By April 2018, Plaintiff was experiencing sharp pain in his lower back that would "make [him] pass out." Tr. 988. Plaintiff also had impaired functionality when going from sit to stand and when reaching floor level, relying heavily on his upper extremities. Tr. 990. Plaintiff's gait also showed decreased velocity and stride length, as well as a very narrow base of support with scissoring and midline crossing due to loss of balance. Tr. 990. Providers noted that

this was consistent with Plaintiff's complaints of low back pain. Tr. 991. Although Plaintiff's joint and spine range of motion were within functional limits for activities of daily living, his muscle strength was "quite impaired." Tr. 991.

Plaintiff underwent physical therapy after his second surgery but was discharged in May 2018 due to making no "appreciable progress in resolving primary complaint of [lower back pain]" because the exercises were "not well tolerated and frequently subjective barriers limited participation in necessary strengthening." Tr. 1583. After a vestibular workup, Plaintiff was diagnosed with labyrinthitis, tinnitus, bilateral paroxysmal vertigo, and other specified hearing loss. Tr. 888–91, 990–91, 1575. In February 2019, Plaintiff continued complaining of severe neck and back pain and received a new physical exam as well as an MRI and CT. Tr. 1587–90. Plaintiff also complained of hearing difficulty, numbness/tingling, and muscle weakness. Tr. 1588. On examination, Plaintiff had 5/5 strength in lower and upper extremities, symmetric reflexes, grossly intact sensation to light touch, with no difficulties with hearing. Tr. 1588. Plaintiff was also tender to palpations along his cervical paraspinals, upper back, and lumbar paraspinals, while also having a negative straight leg raise and negative Spurling's. Tr. 1588.

Plaintiff suffered a heart attack which required surgery in July 2019, after which he recovered well and was discharged home. Tr. 1677. Plaintiff attended cardiac rehabilitation three times a week from August 2019 to January 2020. Tr. 1703, 1797. During his rehabilitation, he complained of chest discomfort that did not get worse with exercise, as well as low back discomfort and knee soreness. Tr. 1703–96.

Although Plaintiff reportedly improved after both back surgeries, his pain returned within just a few months. Tr. 676, 938. This fails to show improvement with treatment. On this record,

the ALJ's finding is not supported by substantial evidence. The ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### III.    Medical Opinion Evidence

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Theo Orchard, PA-C. Because Plaintiff filed his claim before March 27, 2017, the old regulations apply. Under the old regulations, the ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a non-examining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it must be rejected by specific and legitimate reasons. *Garrison*, 759 F.3d at 1012. To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Ford*, 950 F.3d at 1154; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "In addition to considering the medical opinions of doctors, an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources.'" *Revels v. Berryhill,* 874 F.3d 648, 655 (9th Cir. 2017); 20 C.F.R. § 404.1527(f). The regulations make it clear that other medical sources are to be considered under the same factors as those of acceptable medical sources and are sometimes given more weight than an acceptable medical source if they have seen the individual more often than a treating

source, have provided better evidence and a better explanation for their opinion, and if the opinion is more consistent with the evidence as a whole. *See* 20 C.F.R. § 404.1527(f); *see also* SSR 06-03p. Because PA Orchard is a physician's assistant, he is considered an other medical source and must be evaluated as such.

PA Orchard opined that Plaintiff could not perform full-time work on a consistent basis, could only perform part-time, modified work, and would be absent from work one day per week on average because of his chronic pain. Tr. 1035.

First, the ALJ gave PA Orchard's opinion little weight because PA Orchard is not an acceptable medical source and therefore "not entitled to offer a medical opinion regarding the claimant's functioning." Tr. 1207. The ALJ is incorrect. PA Orchard's opinion can be used to show the severity of the Plaintiff's impairments and how they affect the individual's ability to function, which is what it is being offered for here. Despite the ALJ's assertion, PA Orchard is entitled to offer a medical opinion regarding the claimant's functioning.

The ALJ also noted that PA Orchard "fail[ed] to offer a rationale for the claimant's absences as the opinion appears to be based on the claimant's subjective pain allegations without citation to objective medical evidence." Tr. 1207. Because the ALJ erred in assessing Plaintiff's testimony, this reasoning is also not supported by substantial evidence.

The ALJ found PA Orchard's opinion "inconsistent with the medical evidence of record showing medical improvement and increased function post-cervical and lumbar surgeries." Tr. 1207. As discussed above, any finding that Plaintiff improved with treatment is not supported by substantial evidence. Plaintiff's surgeries provided minimal temporary relief.

Finally, the ALJ found PA Orchard's opinion contradicted by physical exams showing Plaintiff with normal gait and full strength in his upper and lower extremities, as well as by

Plaintiff's ability to engage in cardiac rehabilitation and care for his wife. Tr. 1207. Just as Plaintiff's minimal activities of daily living do not undermine his symptom testimony, they do not contradict PA Orchard's opinion. Although PA Orchard is an "other medical source," his opinion was still competent evidence that the ALJ should have considered.

### IV.    Plaintiff's RFC

Plaintiff argues that the ALJ did not include all of Plaintiff's medically determinable impairments in the resulting RFC.

At step four, the ALJ found that Plaintiff was capable of performing light work with the following limitations: he can occasionally push/pull with the bilateral upper extremities; can frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally crawl; can occasionally reach overhead bilaterally, and can tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations; can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery; and can perform simple, routine tasks consistent with a reasoning level of 1 or 2. Tr. 1203. At step five, the ALJ concluded that Plaintiff could perform not only his past relevant work as a waiter, but also other jobs in the national economy existing in significant numbers. Tr. 1209–10. Using the vocational expert's testimony, the ALJ determined that Plaintiff could also work as a garment sorter, an egg sorter, and a basket filler. Tr. 1210.

In determining the Plaintiff's RFC, an ALJ must consider all relevant evidence in the record. *See* SSR 96-8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). As discussed above, the ALJ's refusal to acknowledge Plaintiff's vertigo and tinnitus as neither severe nor medically determinable impairments is unsupported by the evidence. The ALJ provides no reasoning as to why these issues go unacknowledged despite medical records clearly supporting such a finding.

While the full impact of these conditions is unclear, it is clear Plaintiff suffers from a loss of functionality that was not properly incorporated in the RFC. Therefore, the ALJ erred at step four and five.

**V.    Remedy**

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012), quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

This is a rare instance where remand for an award of benefits is appropriate. Here, Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ committed harmful error in discounting Plaintiff's subjective symptom testimony, in rejecting the opinion of PA Orchard, and in failing to account for Plaintiff's vertigo in the RFC. Credited as true, Plaintiff's testimony and PA Orchard's opinion, combined with the vocational expert's testimony, establish that Plaintiff is disabled under the Act. The vocational expert testified that,

in his experience, a person who would be off task for twenty percent of a workday would be unable to retain competitive employment. Tr. 1255. Moreover, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## **CONCLUSION**

The decision of the Commissioner is REVERSED and this matter is REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED this 3rd day of October, 2023.

                                             ____s/Michael J. McShane_____
                                                           Michael McShane
                                           United States District Judge